## CASE NO. – 13-2117

---

## In the United States Court of Appeals for the Fourth Circuit

---

JOSE RAMOS,

*Plaintiff—Appellant,*

v.

MOLINA HEALTHCARE, INCORPORATED and MOLINA INFORMATION SYSTEMS, LLC,

*Defendants—Appellees.*

---

## ON APPEAL

From the United States District Court for the Eastern District of Virginia,
Case No. 1:12-cv-00856

---

## APPELLANT JOSE RAMOS' OPENING BRIEF

---

Andrew F. Pierce
California State Bar No. 101889
Gretchen Birkheimer
California State Bar No. 222184
PIERCE & SHEARER, LLP
2200 Geng Road, Suite 230
Palo Alto, CA 94303
Telephone:   (650) 843-1900
Facsimile:    (650) 843-1999

**Counsel for Appellant
Jose Ramos**

---

September 26, 2014

**TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT .................................................................1

STATEMENT OF THE ISSUES ..................................................................1

STATEMENT OF THE CASE ......................................................................2

    A.   Jose Ramos Is A Highly Qualified Software Technical Director ................2

    B.   Ramos Is Asked To Terminate Roy Levison .................................................3

    C.   Ramos Transitions to Molina From Unisys ..................................................4

    D.   Ramos Is Asked To Terminate Erich Friedrichs Based On Age .................5

    E.   Ramos' Team Is Taken Away .........................................................................6

    F.   The 4.8 Upgrade And Data Center Move .....................................................7

    G.   The Pretextual Termination .........................................................................8

    H.   The Lawsuit ...................................................................................................10

SUMMARY OF ARGUMENT ......................................................................11

ARGUMENT ................................................................................................13

    A.   The Trial Court Erred In Granting Defendants' Motion To Dismiss
        Plaintiff's Third Through Ninth Causes Of Action. ...................................13

    B.   The Trial Court Erred In Dismissing Ramos' National Origin
        Discrimination Claim At The Pleading Stage .............................................15

C.    The Trial Court Erred In Granting Summary Judgment For Defendants On

Plaintiff's Age Discrimination Claim. ........................................................17

1.    There Is A Triable Issue of Fact As To Whether Ramos Met The

Employer's Legitimate Expectations ..................................................18

2.    Ramos Submitted Adequate Evidence of Pretext ...............................20

D.    The Trial Court Erred In Granting Summary Judgment On Plaintiff's

Retaliation Claim. .......................................................................................25

**CONCLUSION** ...............................................................................................**27**

**REQUEST FOR ORAL ARGUMENT** ......................................................**28**

**CERTIFICATE OF COMPLIANCE** ..........................................................**29**

**CERTIFICATE OF SERVICE** .............................................................**30, 31**

**ADDENDUM TO OPENING BRIEF** ..............................................................**vi**

**ADDENDUM TABLE OF CONTENTS** .........................................................**vii**

Unpublished Case

*Belyakov v. Leavitt*, 308 Fed.Appx. 720 (4th Cir. 2009)  ........... AD001-009

# TABLE OF AUTHORITIES

## Cases

*al-Kidd v. Ashcroft* (9th Cir., 2009) 580 F.3d 949 ....................................................16

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir.2001) ............14

*Belyakov v. Leavitt* (4th Cir. 2009) 308 Fed. Appx. 720 ..........................................16

*Botz v. Omni Air Int'l*, 286 F.3d 488 (8th Cir. 2002) .................................................13

*Burlington, Northmen & Santa Fe Ry. Co. v. White 548 U.S. 53*...........................27

*Connelly v. Wometco Enterprises, Inc.*, 314 S.C. 188 (Ct. App. 1994) .................16

*E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936 (4th Cir. 1992) ........................... 17, 18

*Edwards v. City of Goldsboro* (4th Cir. 1999) 178 F.3d 231 ........................... 13, 16

*Finley Lines Joint Protective Bd. Unit 200, Broth. Ry. Carmen, a Div. of Transp. Communications Union v. Norfolk Southern Corp.* (4th Cir. 1997) 109 F.3d 993 ...................................................................................................................................14

*Gibb v. Scott*, 958 F.2d 814 (8th Cir.1992)........................................................ 13, 14

*Greene v. Quest Diagnostic Clinical Laboratories, Inc.* (D.S.C. 2006) 455 F. Supp. 2d. 483................................................................................................................16

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d. 776 (4th Cir. 1999) ......16

*Hill v. Lockheed Martin Logistics Management, Inc.* 354 F. 3d 277 (2004) ..........18

*Holland v. Washington Homes, Inc.*, 487 F.3d. 208 (4th Cir. 2007) .......................24

*Johnson v. Mechs. & Farmers Bank*, 309 Fed. Appx. 675 (4th Cir. 2009)...... 17, 18

*King v. Rumsfeld*, 328 F.3d 145 (4th Cir. 2003) .......................................... 19, 20, 24

*Lettieri v. Equant Inc.*, 478 F.3d 640 (4th Cir. 2007), ..................................... 26, 27

*Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979) .............................................17

*Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230 (4th Cir.1982).............................17

*Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005) ...............................19

*McAuley v. Federal Ins. Co.* (8th Cir. 2007) 500 F.3d 784 .....................................13

*McDonnell Douglas Corp. v. Green* (1978) 411 US 792 ............................. 1, 17, 19

*Reeves v. Sanderson Plumbing, Inc.,* 530 U.S. 133 (2000) ........................ 20, 23, 24

*Santiago-Ram v. Centennial P.R. Wireless Corp.*, 217 F.3d 46 (1st Cir.2000) ......21

*Smith v. Blackledge* (4th Cir. 1971) 451 F.2d 1201...................................................14

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993) ..........................................18

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) ......................21

*Woods v. Dugan*, 660 F.2d 379 (8th Cir.1981)..........................................................14

**Statutes**

28 U.S.C. §1331 ..........................................................................................................1

29 U.S.C. §621-634.....................................................................................................1

42 U.S.C. §2002e – 5(f)(3) .........................................................................................1

42 U.S.C. §1981 ........................................................................................................10

Title VII of the Civil Rights Act of 1964......................................................... passim

**California Statutes**

Labor Code §1102.5....................................................................................................15

**Rules**

Fed. R. Civ. 12(d)......................................................................................................14

Fed. R. Civ. App. P 4(a)..............................................................................................1

Fed. R. Civ. 12(b)..................................................................................1

Fed. R. Civ. 12(b)(6) .................................................................. passim

Fed. R. Civ. 56 ...................................................................................14

Fed. R. Civ. 56(a) ...............................................................................15

Fed. R. Civ. 56(c)(4) ...........................................................................14

Fed. R. Civ. 12(b)(3) ..................................................................... 10, 11

## JURISDICTIONAL STATEMENT

The District Court action that gave rise to this appeal sought recovery under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2002e – 5(f)(3); the Age Discrimination in Employment Act, 29 U.S.C. §621-634; and 29 U.S.C. §1981. The trial court had federal question jurisdiction pursuant to 28 U.S.C. §1331.

Appellant Jose Luis Ramos ("Ramos" or "Appellant" herein) appeals from the Final Judgment entered on August 8, 2013 by the United States District Court for the Eastern District of Virginia, Alexandria Division, which resolved all issues as to all parties and is therefore final.  (JA 1252).  Appellant Ramos filed his Notice of Appeal on September 6, 2013.  (JA 1253-1255).  The appeal is timely pursuant to Fed. R. Civ. App. P 4(a).

## STATEMENT OF THE ISSUES

1.      Did the trial court err in granting a Rule 12(b) motion dismissing Ramos's California law claims based on hearsay evidence outside the pleadings that contradicted facts pleaded in the Complaint?

2.      Did the trial court err in dismissing Ramos' national original discrimination claims at the pleading stage, despite allegations that he is of Hispanic heritage, that his supervisors had verbally demonstrated their dislike of Hispanic employees, that he had received no negative reviews or feedback prior to his termination, that no reason was given for his termination, and that Defendants intentionally terminated Plaintiff because of his Hispanic heritage?

3.      Did Ramos establish that he was satisfying the Defendants' legitimate expectations as required by *McDonnell Douglas Corp. v. Green* (1978) 411 US 792 by showing that there was no documentary evidence that Molina was

dissatisfied with his work, that the employers' position was rebutted by factual evidence and that the employers' specific factual complaints were untrue?

4.     Did the trial court err in ruling that the direct evidence contradicting the reasons given by Molina for Ramos' termination was insufficient to show that the reason given were pretextual?

5.     Did Ramos present sufficient evidence of retaliatory intent to create a triable issue of fact by showing that his supervisor admitted that his team was taken away from him because he refused to fire another employee?

## STATEMENT OF THE CASE

### A. Jose Ramos Is A Highly Qualified Software Technical Director

Ramos is a resident of the State of California (JA 12-13) who was employed as a Software Technical Director by Molina Healthcare, Inc. and Molina Information Systems LLC (collectively "Molina"). His employment with Molina came about as a result of Molina's acquisition of the Medicaid Information Systems division of Ramos' prior employer, Unisys Corporation. (JA 13-14). During his employment with Molina, Plaintiff owned and maintained a residence in California, and another residence in Virginia.  (JA 121, 257).

Ramos was hired initially by Unisys, the predecessor to defendant Molina, in 2007.  Prior to that, he had been working at Harris Corporation as a Chief Systems Engineer. (JA 502).  Prior to his employment with Harris Corporation, he was a Principal Technologist for a company known as 12 Entrepreneuring (JA 504), and Chief Software Architect at Visa International. (JA 505).

Ramos was hired by Unisys on October 1, 2007 as an Executive Architect. (JA 507-508).   He received a pay increase in July 2008.  (JA 509).  On March 23,

2009, he was promoted to become Executive Architect overseeing all of North America. (JA 510-511, 1117, 1132).

## B. Ramos Is Asked To Terminate Roy Levison

Ramos was asked to terminate a senior software engineer in Maine, Roy Levison. This, by company policy, required a performance improvement plan that could take up to 90 days to give the individual a chance to improve, with frequent progress reports and correction notices for performance. (JA 594). Molina's and Unisys' normal policy was that managers who prepared year-end evaluations would go back and talk to prior managers to get input. (JA 546-547). The two-step process entailed an annual log by the employee which ended in the calendar year in December. The document was then sealed online from alteration and forwarded to the supervisor. The supervisor would then solicit feedback from others from January to late March, and offer the findings in an employee review in April. (JA 1119, 1134).

Ramos did not believe that Levison should have been terminated. (JA 598). Levison had been doing an adequate job and then he was given an impossible task to which no one could have responded and was doing the best he could. (JA 598-599). The initial request to terminate Levison came from Tim Brewer, who angrily insisted Ramos do this on the day prior to his joining the organization, during a self-paid trip to Maine in the fall of his first year of employment. (JA 597). Brewer insisted on having Levison terminated. He insisted that the heavy burden of projects that he had already given to him be made even heavier. (JA 599, 1119, 1134). Brewer became upset due to the delays caused by his needing to go through the steps required for a Performance Improvement Plan for Levison. (JA 662, 663). Skeen devised an improper methodology for terminating Levison. Brewer

approached Ramos before he started working and made the request that he get rid of Levison. (JA 663-664, 1119, 1134).

### C. Ramos Transitions to Molina From Unisys

Ramos subsequently oversaw the downsizing of his group at Unisys, eventually including his own job. (JA 1117, 1132). On September 1, 2009, Tim Skeen's boss, Ramos transferred to become an Engineering Director under Skeen. (JA 520-522). His salary was set by Skeen, who, according to company documents, set it at $55,000 below the market reference point. (JA 523-524). There were others with the same job title making substantially more money. (JA 523-524).

On April 30, 2010, as part of Molina's acquisition of the Unisys Medicare group, Ramos transferred to Molina. (JA 526, 1117, 1132).

Ramos' job stayed exactly the same, as did his reporting relationship to Skeen at the time of the Molina acquisition in May 2010. (JA 546-552). His duties were to manage all the software applications associated with the HealthPAS offering. Ramos had a team of about 40 people reporting to him in late 2010. (JA 552-553, 1117, 1132).

Ramos is of Hispanic descent, and Brewer had made negative remarks to Ramos about persons of Hispanic descent, including that Brewer preferred not to work in his home state of Arizona because there were "too many damn Mexicans there." (JA 14).

In the summer of 2010, Brewer was selected as Molina's new Vice President of Engineering Delivery. Brewer and Skeen consistently refused Plaintiff's direct requests to hire or transfer qualified Hispanic, Taiwanese, and Chinese-American

employees onto Ramos' projects.  Brewer and Skeen failed to promote, and gave unwarranted negative reviews to, qualified minority employees.  (JA 14-15).

In addition, Skeen repeatedly attempted to terminate Molina employees over the age of 40, and directed Plaintiff to terminate two such employees who reported directly to Plaintiff.  Plaintiff sought advice from April Krajewski of Molina's Human Resources department, who concluded that Skeen's directives constituted age discrimination.  Through his complaint to the HR department, Plaintiff was able to stop the termination of one of these two employees.  (JA 15).

Skeen remained Ramos' manager through September 2010.  (JA 556).  Ramos began reporting to Tim Brewer towards the end of October 2010.  (JA 556, 1117, 1132). Ramos was familiar with Brewer because Brewer had been a program manager for Unisys in Maine. (JA 557, 1118, 1133).

### D. Ramos Is Asked To Terminate Erich Friedrichs Based On Age

Throughout Ramos' employment and even after Skeen was appointed CTO, Skeen insisted that Ramos terminate Erich Friedrichs, an employee over 60 years of age. Skeen stated repeatedly that Friedrichs was too old and stated the same thing about Irene Poon, Rob Goldberg and others. (JA 600).   Skeen wanted Friedrichs fired without going through the normal HR practice of allowing the employee a chance to improve. (JA 596).  Skeen repeatedly called Ramos and told him he needed to fire Friedrichs.  (JA 596). Skeen insisted that Friedrichs was too old in half a dozen conversations.

Friedrichs was doing the job of three people, covering three states and badly needed additional support. Ramos tried to plead with Skeen saying, "You're asking an inhuman amount of work. You're giving the guy three states. Can I at least hire consultants to help him?" (JA 595, 597). When Friedrichs had a heart attack, he

came back to work two days later because he was afraid he was going to be terminated. (JA 595).

Ramos had a conversation with Krajewski about Friedrichs in which she gave advice about how to deal with someone being terminated because of his age. She said it should not be allowed. (JA 600-601). As Skeen pressed forward, Krajewski gave him advice about documenting the process or slowing it down. (JA 601). There were about a half a dozen discussions in which Krajewski and Ramos talked about Friedrichs and the subject of age discrimination came up. (JA 601, 651). The earliest conversations occurred in the spring or early summer of 2010, and continued into the period after November 2010. (JA 651-652, 1120, 1135). Nobody at Molina could officially terminate an employee without going through a fairly significant number of steps. (JA 604-605). Under HR policy, managers do not get to circumvent the rights of employees without informing them of their lack of performance.

Krajewski was as alarmed as Ramos was about the age discrimination and said, "He can't do that" about Skeen's plans for Friedrichs. (JA 604). When Ramos expressed concerns about Skeen's insistence on terminating Friedrichs, Krajewski said he could not do so without grounds. She said he would be terminating him based on age and that she would oppose it. (JA 1120, 1135).   Friedrichs was not fired.

Ramos received additional directives from Skeen to "manage out" other older employees such as Irene Poon and Robin Czerny.   (JA 655-656, 1119-1120, 1134-1135).

**E. Ramos' Team Is Taken Away**

Just before Christmas 2010, Ramos' team members started calling him asking why they were being reassigned. Ultimately, his entire team was reassigned.

(JA 575-576).  This event occurred suddenly and he was not able to get information from Brewer about it. Brewer did not tell him in advance.  (JA 576). Ramos had to learn from the HR Department that his people had been assigned to a new manager.  (JA 577).  It took about two weeks for Brewer to get back to him and confirm that this indeed had occurred.  (JA 577, 1118, 1133).

### F.  The 4.8 Upgrade And Data Center Move

In January 2011, Ramos was assigned to lead a massive project called the 4.8 upgrade and data center move, which involved a thousand data systems being moved from Unisys to Molina. (JA 578).  The effort entailed all the software moving to Molina, all applications needed to build the company's Medicaid Management Information System, and the coordination and readiness of new servers to receive these packages. Ramos asked Brewer for a deadline, what resources he could count on, and how his progress was going to be measured.  (JA 579). This project had originally been communicated as a potential task for Ramos' entire team. By the time Brewer asked him to take it on again, Brewer had removed Ramos team.  (JA 1118, 1133).

In January, Brewer and Ramos communicated about the 4.8 project and the larger data center project. (JA 616).  They did not go through Ramos' performance review or talk about any concerns Brewer was having. (JA 616-618, 1120, 1135).

Brewer told Ramos in that communication that he had taken away his team because Tim Skeen complained that he did not get rid of Erich Friedrichs. (JA 617, 618-619, 652).

### G. The Pretextual Termination

Ramos did not invite Brewer to lay him off, did not tell him that he needed a team reporting to him, did not tell Brewer he was requiring him to prove himself again, and did not tell him that he was going to take a week off. (JA 620).

Brewer did not present Ramos with any feedback that he received from Skeen and others, nor did he explain that he had moved the team out from under him so he could manage and run the Maine and Idaho 4.8 project. (JA 618). Brewer could not have spoken to Ramos about his 2010 performance in January. According to HR policy he would have been gathering information from peers in order to present his findings and review in April of that year.

Brewer sent a commendation email to Ramos on February 3, 2011. (JA 1042-1043). Ramos was never under any communicated performance improvement plan nor improvement period.

There is an email indicating that Skeen and a third employee were discussing Ramos' termination by Brewer before it happened. Specifically, another employee commented "Guess Brewer couldn't get rid of Jose either ..." and Skeen ominously replied, "Not yet ..." (JA 1028). Skeen acknowledged that they were discussing "whether or not Jose is going to be managed out..." (JA 465). This occurred on January 4, 2011. (JA 1028). In addition, it is undisputed that Brewer looked to Skeen for input on Ramos' Performance Evaluation in late January 2010, only about a month before the decision to terminate. Skeen testified that Brewer wanted "specific feedback ... which made sense." (JA 468). Skeen wrote a response in which he claimed Ramos "went against specific direction that I gave him." (JA 986-987) . Ramos' failure to terminate Friedrichs, the older employee, because he felt it would be age discrimination, was the prime example of Ramos failing to follow his specific direction. (JA 481-482, 1030-1034).

8

On March 2, 2011, Skeen, who was Chief Technology Officer of the entire Molina organization at the time, wrote an email to a coworker in which claimed, "I will talk to Brewer and hopefully we won't have to deal with Jose." (JA 428-429, 1029).

Ramos did not hear any complaints about the way he treated people in conference calls or in person. (JA 629). He led calls with up to 60 people asking for their commitment of resources to the master plan he had crafted and obtained approval for from Brewer. Rob Goldberg, a Molina employee at the time, participated in these calls. Ramos did not yell at or berate any individuals in a February 28 conference call or any other call. (JA 633, 1121-1122, 1124-1125, 1136-1137) .

Ramos was notified by Warren Ingalls, another older employee, that Skeen was engineering his termination. (JA 641-643). Skeen had referred to Ingalls as inept, slow, inappropriate, and old, in the same pattern as with other employees. (JA 643). Skeen also gave Ramos directions to get rid of Irene Poon, another older employee. It was irregular for a vice president who had no direct knowledge of an employee's performance, to reach down below his level to ask that an older employee be terminated. (JA 649-650).

Rob Goldberg was another individual who was older and who had a team underneath him that was suddenly removed. (JA 675-676, 1124-1126). Skeen had commented about Goldberg being too old for that job. (JA 676, 1122, 1137).

On March 10, 2011, Brewer informed Ramos without any warning that he was being laid off, effective immediately. Ramos had not received any negative feedback, complaints or poor performance reviews prior to this notification. (JA 15) Ramos was offered a severance agreement and severance payment. (JA 1122, 1137) When Ramos contacted Molina to inquire about some of the terms in the

severance agreement, he was told that he had not been laid off, but had been fired. He was not told why. (JA 16, 678, 1122, 1137).

Ramos' duties were taken over by a Molina employee in his early twenties who is an Indian national affiliated with Infosys. (JA 15-16).

## H. The Lawsuit

Ramos timely filed a complaint with the California Department of Fair Employment & Housing and the Equal Employment Opportunity Commission ("EEOC"), alleging that he had been terminated on the basis of his age, his race and his national origin, in retaliation for opposing Mr. Skeen's attempts to discriminate against older workers. (JA 16). The EEOC issued a Right-to-Sue Notice on December 30, 2011. (JA 99). Ramos timely filed this action in the Central District of California, where Molina's corporate offices are located, and where the decision to terminate him was made, on March 20, 2012. (JA 12-27, 99-100, 214-229, 1229).

Ramos' initial Complaint alleged nine causes of action against Molina: (1) Age Discrimination; (2) Retaliation under the Age Discrimination in Employment Act; (3) Race and National Origin Discrimination under 42 U.S.C. §1981; (4) Race and National Origin Discrimination under Title VII; (5) Discrimination and (6) Retaliation under the California Fair Employment & Housing Act ("FEHA"); (7) Wrongful Termination in Violation of Public Policy as pursuant to California Labor Code §1102.5 and (8) discrimination under the FEHA; and (9) Failure To Investigate Discrimination under the FEHA. (JA 12-27, 1229).

On May 1, 2012, Molina filed a Motion to Dismiss all of Ramos' claims under Rule 12(b)(6); for an order dismissing the entire action pursuant to Rule 12(b)(3) on the ground that venue in the Central District of California was improper; or in the alternative, to transfer venue to the Eastern District of Virginia.

(JA 34-64, 168-198).  In support of its motion, Molina attached a declaration from Brewer, who works and lives in Arizona, asserting that Ramos was not a California resident.  (JA 67-69, 202-204).

The California Central District granted the motion to transfer venue, reserving decision on the 12(b)(6) and 12(b)(3) claims. (JA 28-32). Molina renewed its motion in the Eastern District of Virginia, and on January 11, 2013, the trial court granted Molina's 12(b)(6) motion to dismiss Plaintiff's Third, Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Causes of Action, leaving Ramos' age discrimination and retaliation under the Age Discrimination in Employment Act as the only remaining claims.  (JA 358, 1229).

On April 19, 2013, Molina filed a Motion for Summary Judgment on Ramos Age Discrimination and Retaliation claims.  (JA 359-998, 1229-1230).

On July 9, 2013, the Order Granting Defendants' Motion For Summary Judgment was issued.  (JA 1219).  The court issued a Memorandum Opinion And Order (JA1220-1251) and a Final Judgment (JA 1252) on August 8, 2013.  Jose Ramos filed his Notice of Appeal on September 6, 2013. (JA 1253-1255).

## SUMMARY OF ARGUMENT

The trial court erroneously dismissed Ramos' claims at two stages – the pleading stage and the summary judgment stage.  At the pleading stage, Ramos' California law claims were improperly dismissed based on his being a Virginia resident.  Mr. Ramos is the record owner of a home in California, he worked for Molina in California, Virginia, and many other States and the decision to terminate him came from Molina's central office, which is in California.  It was erroneous to dismiss his claims based on an outside-the-pleadings declaration submitted by his Arizona based manager.

11

The trial court also erred in dismissing Ramos' claim for race and national origin discrimination at the pleading stage. Mr. Ramos is Hispanic and the direct supervisor who made the decision to terminate him had verbally expressed dislike for Hispanic employees and in addition had prevented Mr. Ramos from promoting them. At the pleading stage this should have been enough.

At the summary judgment stage, Ramos' claims for age discrimination and retaliation were dismissed. The primary reason for dismissal of both claims was that the court found insufficient evidence that the reasons given by Molina for his termination, and their dissatisfaction with his work, were pretextual. The court seems to have relied overly much on case law holding that an employees' own evaluation of his work will be rebuttal proper showing of grounds for termination. Here, however, the grounds given for termination, i.e. that Ramos threatened to quit during a major project and berated a fellow employee, were rebutted by direct evidence. Ramos denied having the conversation threatening to quit with his manager and his manager could not have been mistaken about it as he is the one who had the conversation. If the manager, Brewer, made up the incident, then it was clearly pretextual. Notably, there was no email or any other documents from Ramos supporting Brewer's version and he sent an email commending Mr. Ramos only a short time later.

As to the incident of allegedly berating another employee, a witness who was on the same conference call submitted a declaration stating that at no time did Ramos berate anyone. Emails show that Brewer was trying to engineer Ramos' termination before this incident occurred, and that Brewer asked the employee to step forward and make the complaint against Ramos, while the employee making the complaint did not want to bring any sort of charge against Ramos. Clearly again, there was a triable issue to whether the reasons given for termination were

pretextual.  This being the case, Ramos's case for retaliation and age discrimination should have been allowed to proceed.

## ARGUMENT

### A. The Trial Court Erred In Granting Defendants' Motion To Dismiss Plaintiff's Third Through Ninth Causes Of Action

The Court granted Defendants' 12(b)(6) motion to dismiss Plaintiff's Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action on the grounds that Plaintiff was not a California resident subject to the protections of California law. (JA 358)

This ruling was erroneous because the Court improperly considered hearsay evidence outside the pleadings, failed to accept the facts pleaded in the Complaint as true, and failed to draw all reasonable inferences in Plaintiff's favor, as required at this stage of the litigation.

A district court considering a motion to dismiss under Rule 12(b)(6) must accept all factual allegations in the complaint as true.  *Edwards v. City of Goldsboro* (4th Cir. 1999) 178 F.3d 231, 244.  The motion will "succeed or fail based upon the allegations contained in the face of the complaint."  *McAuley v. Federal Ins. Co.* (8th Cir. 2007) 500 F.3d 784, 787, *citing Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir.1992) *and Botz v. Omni Air Int'l*, 286 F.3d 488, 490 (8th Cir. 2002).  The only pleaded material before the Court on the issue of Mr. Ramos' residence was that Mr. Ramos was a resident of the State of California subject to the protection of the FEHA and California Labor Code. (JA 12-13)  Molina submitted a declaration from Mr. Brewer, who lives and works in Arizona, that Ramos allegedly lives and works in Virginia, rather than California (JA 67-69, 202-204)  Ramos submitted a declaration in opposition stating that he had resided and worked in California off and on during his employment at Molina, including summer 2010 and November and December 2010. (JA 121, 257).

13

The Court should not have considered Brewer's declaration (JA67-69, 202-204) regarding Mr. Ramos' place of work, since the declaration constituted matter outside the pleadings. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.2001); FRCP 12(d). It was error for the Court to disregard the pleadings and accept Brewer's declaration as grounds for dismissing Plaintiff's FEHA claims.

To the extent that the Court viewed Defendants' motion to dismiss as a motion for summary judgment, its decision was likewise in error. A district court's failure to exclude matters outside the pleading may indicate the Court's intent to convert the 12(b)(6) motion into a motion for summary judgment under Rule 56. *Woods v. Dugan*, 660 F.2d 379, 380 (8th Cir.1981). If such was the Court's intention – which is by no means clear from the record -- the Court was required to provide the parties with notice of that intention and an opportunity to provide additional materials, including, as necessary, a reasonable opportunity to conduct discovery. FRCP 12(b)(6); *Finley Lines Joint Protective Bd. Unit 200, Broth. Ry. Carmen, a Div. of Transp. Communications Union v. Norfolk Southern Corp.* (4th Cir. 1997) 109 F.3d 993, 996. Indeed, Ramos requested leave to conduct discovery. (JA 102). The Court's failure to do so constitutes prejudicial error. *Gibb, supra,* 958 F.2d at 816.

Further, if the Court elected to treat the motion to dismiss as a motion for summary judgment, the Court was required to apply the standards set forth in Rule 56. *Smith v. Blackledge* (4th Cir. 1971) 451 F.2d 1201, 1202. Even assuming that Mr. Brewer's declaration could be properly considered on a converted motion for summary judgment, his assertion regarding Ramos' residence and place of work was not based on his personal knowledge and should have been disregarded as hearsay. Fed. Rules Civ. Proc., Rule 56(c)(4). The Court's consideration of Brewer's assertions regarding Ramos' place of work failed to comport with Rule

14

56(c)(4).  Finally, Rule 56 provides that summary judgment may not be granted if there is a genuine issue as to any material fact.  (Fed. Rules  Civ. Proc., Rule 56(a)).  The location of Ramos' residence and place of work was material to his entitlement to protection under the FEHA and the California Labor Code and was placed directly in dispute by the pleadings, Brewer's declaration, and Ramos' declaration.  Granting summary judgment, or a dismissal that has the effect of summary judgment, on this point was error.

Likewise, Ramos pleaded that he is a resident of the State of California for purposes of his Seventh and Eighth Causes of action for wrongful termination in violation of public policy.  Under California law, Ramos stated two claims for wrongful discharge: a Seventh Cause of Action based on the public policy articulated in California's whistleblower statute (Labor Code §1102.5) (JA 23-24) and an Eighth Cause of Action based on the public policy against race discrimination pursuant to the California Constitution and the FEHA. (JA 24-25). Again on the basis of Brewer's declaration, the trial court made a factual determination that Ramos was not a California resident working in California for California supervisors at the time of the discriminatory acts and granted Defendants' motion to dismiss these claims.  This determination, which was contrary to the pleaded facts and based on inadmissible hearsay, was also error, for all the reasons set forth supra.

## B. The Trial Court Erred In Dismissing Ramos' National Origin Discrimination Claim At The Pleading Stage

The court granted Defendants' motion to dismiss Plaintiff's Third and Fourth Causes of Action for race discrimination on the grounds that Plaintiff had failed to plead a sufficient connection between his supervisors' racial animus toward Hispanic employees and the decision to terminate his employment.  (JA 358)

15

On Molina's motion to dismiss Ramos' Third, Fourth and Fifth Causes of action, (JA 34-64, 168-199) the Court dismissed the claims holding that Ramos had not stated a sufficient nexus between his Hispanic heritage and his termination. Ramos alleged that he is of Hispanic heritage, that his supervisors had demonstrated their dislike of Hispanic employees, that Brewer in particular disliked people he perceived to be Hispanic origin (as reflected in his "too many Mexicans" statement), that Ramos had received no negative reviews or feedback prior to his termination, that no reason was given for his termination, and that Molina intentionally terminated Ramos because of his Hispanic heritage. (JA 13-15, 18-21, 24-25) The Court was required to accept these pleaded facts as true (*al-Kidd v. Ashcroft* (9th Cir., 2009) 580 F.3d 949, 956 ; *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)) and to draw inferences arising from these facts in Ramos' favor. (JA 103) *Edwards, supra,* 178 F.3d at 244; *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d. 776, 783 (4th Cir. 1999). Such inferences would reasonably include that Ramos' supervisors disliked Ramos because he is of Hispanic heritage, and that, with no other reason given for his termination, such dislike motivated his termination. *Greene v. Quest Diagnostic Clinical Laboratories, Inc.* (D.S.C. 2006) 455 F. Supp. 2d. 483, 495 (where no reason is given for termination and plaintiff pleads that she was terminated for an unlawful reason, the reasonable inference is that the plaintiff was terminated for an unlawful reason) (*Citing Connelly v. Wometco Enterprises, Inc.*, 314 S.C. 188 (Ct. App. 1994)).

Had the Court drawn these inferences in Plaintiff's favor, Ramos' Third, Fourth and Fifth Causes of Action should not have been dismissed. *See Belyakov v. Leavitt* (4th Cir. 2009) 308 Fed. Appx. 720, 746 (in Title VII case, supervisor's statement that there were "too many Russians at NICDT already," when construed in plaintiff's favor, reflected discriminatory animus against Plaintiff). Indeed, the interference is even stronger in this case than in *Belyak*ov, since Brewer, the

individual who made the statement regarding "too many Mexicans" in front of Ramos, was also the individual who made the decision to terminate Ramos's employment. The Court erred in failing to accept Ramos' pleaded facts, and the reasonable inferences arising from those facts, in Ramos' favor on the motion to dismiss.

For all of the foregoing reasons, the Court's Order granting Defendants' motion to dismiss Counts III, IV, V, VI, VII, VIII, and IX of Plaintiff's Complaint was reversible error.

### C. The Trial Court Erred In Granting Summary Judgment For Defendants On Plaintiff's Age Discrimination Claim

In order to establish a cause of action under the ADEA, a plaintiff must demonstrate that but for the employer's motive to discriminate against the plaintiff on the basis of age, he would not have been discharged. This can be established in one of two ways; first, under the ordinary standards of proof by direct or indirect evidence relevant to and sufficiently probative of the issue. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1017 (1ˢᵗ Cir. 1979). Alternately, a plaintiff may resort to the judicially created scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and adapted to ADEA cases. *Lovelace v. Sherwin-Williams Co*., 681 F.2d 230, 239 (4ᵗʰ Cir.1982).

To establish a prima facie case of age discrimination under the *McDonnell Douglas* framework, "the employee must prove that (1) he is a member of a protected class; (2) who suffers an adverse employment action; (3) at the time of the action, his performance was satisfactory to meet his employer's legitimate expectations, and (4) he was treated less favorably than persons who are not members of the protected class." *Johnson v. Mechs. & Farmers Bank*, 309 Fed. Appx. 675, 682 (4th Cir. 2009); *See E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936,

941 (4th Cir. 1992). If the plaintiff is able to establish a *prima facie* case, the employer is then required to articulate a legitimate, nondiscriminatory basis for the adverse employment action. *Johnson*, 309 Fed. Appx. at 682. Once the employer has done this, the burden shifts back to the employee to show that the employer's proffered reason for its action is merely a pretext for illegal age discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993); *see also Hill v. Lockheed Martin Logistics Management, Inc.* 354 F. 3d 277, 285 (2004).

The trial court held that Plaintiff had not established a *prima facie* case of age discrimination because he failed to present evidence that he met his employer's legitimate expectations at the time of his termination. The Court further held that Plaintiff had failed to demonstrate a genuine issue of fact on the issue of pretext. (JA 1220-1221, 1232-1236). These rulings were incorrect.

### 1. There Is A Triable Issue of Fact As To Whether Ramos Met The Employer's Legitimate Expectations

On the matter of a prima facie case, Plaintiff submitted evidence that he had been working for Unisys, Molina's predecessor, in a higher-level job (JA 1132), and later received a satisfactory rating from his supervisor, Tim Skeen, prior to his transfer to Molina. (JA 1035-1041). Skeen acknowledged Ramos' history and background in managing engineers, which was what his job required. (JA 436, 446) Plaintiff had experience handling "monster" projects before and no one had suggested that he did not have the experience or technical skills to perform the job. His personnel file, the entirety of which was put in evidence, contains no negative performance evaluations, no performance improvement plan, no reprimand, no written warning or any other evidence of unsatisfactory performance. (JA 1044-1103). The testimony of Brewer, supported by a laudatory email written by him, was that as late as February 3, 2010, a scant three to four weeks before the decision

to terminate Ramos was made, Ramos was performing adequately. (JA 930, 1042-1043). The compliments to Plaintiff's performance, and the lack of any written or verbal warning of performance problems in his file, are indicators that he was qualified for the position. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 353-354 (5th Cir. 2005).

At the time of his termination, Plaintiff was not told that his termination was for cause. He received the maximum possible severance pay under Molina's policies and a discretionary bonus at the time of his termination. (JA 722-723, 768). Brewer recommended the severance and Brewer coded the termination as a lay-off, not a termination for cause. (JA 776-778).

The trial court's opinion acknowledges that the evidence showed "that the employer was not dissatisfied." (JA 1234-1235). *Id.* at 16. Nonetheless, the trial court cited authority from this Circuit to the effect that Plaintiff's own testimony cannot establish a genuine issue of material fact regarding the employer's expectations and that it is the employer's point of view that controls. Primary reliance was placed upon this Court's decision in *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003). (JA 1235) The trial court's interpretation of *King v Rumsfeld* would seem to imply that the only way an employee could make a prima facie showing under *McDonnell Douglas* would be to get direct evidence from his managers that they terminated him despite the fact that his performance was adequate, and it also implies that factual rebuttal, whether it comes from the employee, co-workers or customers, is irrelevant because it is only the employer's declarations about its state of mind that matter. This, of course, is not the law. The issue in *King* was the quality of lesson plans and classroom teaching. These are questions of professional judgment, where the employer's honestly held, if incorrect, opinion is the key to understanding whether its motives were

19

discriminatory. *Id.* at 149-150. The issue here is whether Molina's account that Ramos' work was unsatisfactory because he threatened to resign and berated a fellow employee was true. Ramos submitted evidence rebutting each and every criticism as a factual matter. Brewer could not have had a good faith belief that Ramos should have been terminated for threatening to quit or berating a fellow employee when there is hard factual evidence that Ramos never threatened to quit, and that others who listened to the same phone conversation in which the alleged berating occurred, thought that Ramos was being berated, not the other way around. Moreover, the employee who was allegedly berated specifically stated she did not wish to make any sort of claim against Ramos. Under these circumstances, there is certainly a triable issue of fact with regard to the quality of Ramos' performance, which goes both to the prima facie case and the question of pretext, as discussed more fully below. Percipient witnesses deny that the critical events occurred. That should be sufficient to prove that the incidents were fabricated and pretextual.

Moreover, the facts of this case demonstrate that in fact the employer was not dissatisfied with Plaintiff's performance. How can an employee who was not terminated for cause, who received a discretionary bonus and the largest possible severance pay, who was never put on a performance improvement plan or given a less than satisfactory rating by any supervisor, be said as a matter of a law not to have been performing adequately at the summary judgment stage?

## 2. Ramos Submitted Adequate Evidence of Pretext

On the issue of pretext, a plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing, Inc.,* 530 U.S. 133, 135 (2000). A plaintiff can

accomplish this goal "by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "Courts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent." *Santiago-Ram v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir.2000).

According to the testimony of Brewer, the man who terminated Ramos, there were two things that led to Ramos' termination. The first was that he allegedly threatened not to report to work on the 4.8 upgrade project and asked to be laid off. Ramos flatly denied that this conversation ever occurred. April Krajewski, the HR manager who was advising Brewer with the Ramos situation, acknowledges that she never talked to Ramos about this and that there was no confirmation of it other than Brewer's own statements. (JA 744-745, 772) . It is undisputed that Ramos did not take any time off, never stopped working on the project, and did not offer his resignation. (JA 928). Even more telling, there is not a single email to or from Ramos to corroborate Brewer's story, which is important given that Brewer and Ramos did not work in the same state and only communicated electronically. In fact, Brewer thanked Ramos the next week for "your representation of my ideas and direction," and added that "I greatly appreciate the work you are doing." (JA 1042-1043). One would think that if a senior employee refused to perform a duty, there would be some direct or indirect reference to the event in some email to or from that employee. However, no documentation to or from Ramos supports Molina's position. In short, the entire incident is fictional. An incident that never occurred is clearly pretextual.

With regard to the second incident, the alleged berating of Tammy Lynn, the evidence is also overwhelming that this was pretextual. First of all, in an email dated February 25, 2010, Brewer stated that he was "ready to move" on Ramos and

was trying to set up meetings to finalize it. (JA 992-993). April Krajewski, an HR Staff member who was advising Brewer, acknowledged that her interpretation of the email was that Brewer had decided to terminate Ramos. (JA 748). Since she had been discussing the Ramos situation with Brewer for a month, her evaluation of his intent is certainly credible.

The incident with Lynn, if it occurred, was not until later. (JA 990-991, 1115). Both Jose Ramos and third party witness, Rob Goldberg, who was on the conference telephone call, and many other calls with Tammy Lynn and Ramos, deny that Ramos ever berated Lynn or belittled her as asserted by Molina. The one-page form writing up the incident authored by April Krajewski, (JA 757) at a time when she already knew Brewer wanted to terminate Ramos, is telling. First of all, Tammy Lynn expressly stated that she did not wish to bring a formal complaint. Secondly, the memo does not quote or paraphrase any improper or inappropriate language allegedly used by Ramos. The evidence indicates that Lynn was asked by Brewer to make this complaint. (JA 756). If Brewer was looking to gin up an incident to justify a termination decision that had already been made, this is exactly what you would expect him to do – encourage a low-level employee to make an exaggerated complaint to justify the decision that had already been made. Under these facts, not only is there evidence of pretext, Ramos submits that no rational finder of fact could conclude that this alleged incident actually led to Ramos' termination.

There was a plethora of evidence that the standard practice at Molina for dealing with employees whose performance was declining was to put them on a formal performance improvement plan. (JA 749-751). Ramos himself did this, as instructed, with those employees reporting to him. April Krajewski, who was HR manager for a unit with 1,200 employees (JA 698), acknowledged that would be

the normal method of proceeding.  (JA 716-719).  She also acknowledged that she recommended that Ramos be put on a performance improvement plan if Brewer wanted to discipline him.  (JA 747, 750-751).  Indeed, see also, (JA 1107) last sentence:  "Ms. Krajewski instructed Mr. Brewer to put Mr. Ramos on performance improvement monitoring for 90 days."  But there was never a performance improvement plan of any kind, nor is there any reference to the possibility of such a plan in Ramos' personnel file.  (JA 1044-1103).  There is no email or other document referencing such a plan directly or indirectly.  There was sufficient time to prepare a 30-day plan – Ramos was terminated on March 10, 2011, and the performance issues supposedly dated back to at least January 2011.

It would be one thing if Molina claimed that the company never used performance improvement plans or that there was an emergency situation with Ramos.  Instead they have argued that, although Krajewski recommended a plan, they simply forgot to document it in any email or writing of any kind.  They also forgot to mention it to Ramos at his termination, when he thought he was being laid off, since he was getting his full bonus and the maximum potential amount of severance pay.  Molina's entire story is disingenuous.  When there is a termination that departs so severely from expected employment practices that is powerful evidence that the reasons given are pretextual.

The trial court's opinion appears to acknowledge that documents submitted by Plaintiff do "call into question the veracity of Defendants' stated reasons." Memorandum Opinion and Order ("Memorandum Opinion") at 20-21. (JA 1239-1240).  However, the trial court held that rebutting the factual basis for the alleged grounds for termination was not enough evidence pursuant to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. at 146 and this Court's opinions in *Holland v.*

*Washington Homes, Inc.*, 487 F.3d. 208, 218 (4th Cir. 2007), (which the trial court described as identical to the instant case) (JA 1239) and *King v. Rumsfeld*.

  In *Reeves*, the court rejected lower court decisions holding that if the plaintiff presents evidence that the employer's innocent explanation is false, the employer may nonetheless obtain a summary judgment, unless the plaintiff presents further evidence. *Id*. at 146-149. *Reeves* confirmed that in the typical case, the plaintiff's showing of pretext, combined with a prima facie case, will permit a finding of discriminatory intent, and thus preclude judgment as a matter of law for the employer. *Id.* at 148-149. The circumstances identified in *Reeves,*i.e. evidence of other non-discriminatory reasons for the employer's decision, or there is only a weak issue of fact, are not present here. *Id.* at 148-149. In the *Holland* case, the court acknowledged that, if the rationale to fire the employee was contrived after the real decision was made, this would be evidence of pretext, and perhaps more. *Id*. at 215. Here, the email trail indicates that the intention by Brewer to terminate was conveyed to others before the alleged incident with Tammy Lynn. The earlier incident in which Ramos allegedly threatened to quit is not comparable to the situation in *Holland* in which the supervisor believed another party had been threatened by the employee. Brewer could not have been mistaken about whether Ramos threatened to quit or not, as he was the one who heard it when it occurred. If an employer attempts to demonstrate a legitimate cause for termination by reciting an incident that occurred in the supervisor's presence, and there is evidence that that incident did not occur, that should be sufficient to show pretext. If the prima facie case is enough to survive summary judgment, a purported legitimate grounds for discrimination that the supervisor makes up out of whole cloth, should not put the employer in a better position – it

should put them in a worse one, as there is a strong inference that the true reasons are improper, and are being concealed.

### D. The Trial Court Erred In Granting Summary Judgment On Plaintiff's Retaliation Claim

The trial court's opinion acknowledges that Plaintiff engaged in protected activity under the Age Discrimination in Employment Act and that there was evidence of an adverse action taken against him.  Memorandum Opinion, at p. 25. (JA 1244).  The Court's opinion on causation is less clear.  The Court states that Plaintiff did not proffer evidence to establish that his supervisor, Brewer, had knowledge of the protected acts, but then acknowledges that "Brewer's knowledge of the content of those meetings would come as no surprise."  (JA 1244)  On the retaliation claim, the trial court's main reliance was on Ramos' alleged failure to show that his termination was pretextual.  (JA 1245)  The arguments presented in Section C above show that there was a triable issue of fact as to whether Ramos' termination as pretextual.

There was ample evidence that the decision-makers behind Plaintiff's termination knew of his protected activity.

Plaintiff had complained to HR that there was a wrongful age motive behind his supervisor's efforts to get rid of Mr. Friedrichs, one of Ramos' supervisees. There is evidence from Brewer's own mouth that Ramos' working team was taken away from him about three months before he was fired by Brewer because he refused to terminate Friedrichs.  (JA 617, 1121, 1136).  There is direct evidence that Brewer received input from Skeen, Ramos' former supervisor, criticizing Ramos for failing to follow Skeen's directives, the prime example of which was failing to terminate Friedrichs.  (JA 481-482, 986-989).  Skeen thought removing

the team was a demotion and acknowledged having input into that decision.  (JA 458-460).

The taking away of Ramos' team in December 2010 was a critical factor in the ultimate termination.  Skeen acknowledged in his deposition that Ramos needed a team to perform the work he had been assigned.  (JA 460-461).  Ramos' successor, Raj Mishra, was given a dedicated team as soon as he took over Ramos' job.  (JA 1125).  Skeen had engineered the termination of another employee in a similar manner by loading more work onto him than any one person could handle. Even assuming the incident with berating Tammy Lynn occurred as Molina describes, it is clear from the Krajewski's memo (JA 991) and Goldberg's declaration (JA 1125-1126), that Lynn's frustrations arose out of the fact that Ramos was trying to find other employees, such as herself, to work on his projects, because due to Brewer's retaliation actions, he no longer had a team to command. Mr. Goldberg's testimony confirms that Tammy Lynn did not want to support Ramos since she was not assigned to him.  Since Brewer admitted to Ramos that he took Ramos' team away because Ramos had refused to terminate the older employee Friedrichs, the causal link to protected activity is clear.

A supervisor's pattern of "continuing retaliatory conduct and animus" setting a complaining employee up for termination may establish a causal link sufficient to withstand summary judgment.  In *Lettieri v. Equant Inc.*, 478 F.3d 640, 650-651 (4th Cir. 2007), in the weeks following the plaintiff's complaint of sex discrimination, her managers stripped her of her supervisory responsibilities, her ability to meet with clients and her ability to set prices. Noting that "[t]hese steps made it easier for Taylor to take the position later that *Lettieri* was not needed and should be terminated," the court held that the plaintiff had established causation sufficient to state a prima facie case of retaliation.  In addition to

recognizing the setup, the Fourth Circuit also recognized that under *Burlington,*
*Northmen & Santa Fe Ry. Co. v. White 548 U.S. 53, Lettieri*'s managers' decision
to strip her of her supervisory authority – similar to what Brewer did to Ramos –
could constitute an independently actionable retaliatory act.

   With regard to pretext, the analysis is the same as with respect to the
discrimination complaint – Plaintiff has submitted direct evidence rebutting the
causes given for his termination.  Moreover, he has direct evidence from his own
supervisor's mouth that Ramos'  team was taken away from him because he
refused to fire an employee under circumstances which he believed would
constitute age discrimination and which he reported to HR would constitute age
discrimination.  Thus, there is a direct causal link to a retaliatory motive.

## <u>CONCLUSION</u>

   Jose Ramos requests that the Court of Appeals reverse the trial court
judgment and remand the case with instructions that the court's dismissal of his
California and federal national origin discrimination and age discrimination claims
shall be reversed and discovery should be permitted on the California and national
origin discrimination claims, as they were dismissed prior to discovery.


Dated:  September 26, 2014            PIERCE & SHEARER LLP

                                      By: *<u>/s/ Andrew F. Pierce</u>*
                                         Andrew F. Pierce
                                         California State Bar No. 101889
                                         Gretchen Birkheimer
                                         California State Bar No. 222184
                                         2200 Geng Road, Suite 230
                                         Palo Alto, CA 94303
                                         Telephone:   (650) 843-1900
                                         Facsimile:   (650) 843-1999

## <u>REQUEST FOR ORAL ARGUMENT</u>

Jose Ramos respectfully requests oral argument as it may be helpful to the

Court in resolving the legal and factual issues raised by this appeal.

Respectfully submitted,

Dated:  September 26, 2014                PIERCE & SHEARER LLP


By: <u>*/s/ Andrew F. Pierce*</u>
    Andrew F. Pierce
    California State Bar No. 101889
    Gretchen Birkheimer
    California State Bar No. 222184
    2200 Geng Road, Suite 230
    Palo Alto, CA 94303
    Telephone:   (650) 843-1900
    Facsimile:    (650) 843-1999

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. P. RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,

Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitation of FED. R. APP. P.

    32(a)(7)(B) because:

⊠      this brief contains **8,082** words, excluding the parts of the brief

exempted by FED. R. APP. P. 32(a)(7)(B)(iii)

2. This brief complies with the typeface requirements of FED. R. APP. P.

    32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6)

    because:

⊠      this brief has been prepared in a proportionally spaced typeface using

Microsoft Word 2010 in Times New Roman 14-point typeface

Dated:  September 26, 2014

                              PIERCE & SHEARER LLP


                         By:   */s/ Andrew F. Pierce*_____
                               Andrew F. Pierce

                               ATTORNEYS FOR APPELLANT/
                               PLAINTIFF JOSE RAMOS

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew F. Pierce, hereby certify that I electronically filed a copy of

**APPELLANT/PLAINTIFF JOSE RAMOS' OPENING BRIEF (WITH**

**ADDENDUM – INDEX OF UNPUBLISHED OPINIONS CITED IN**

**APPELLANT JOSE RAMOS' OPENING BRIEF)** with the Clerk of the Court

for the United States Court of Appeals for the Fourth Circuit by using the appellate

CM/ECF system on September 26, 2014.  I certify that all participants in the case

are registered CM/ECF users and that service will be accomplished electronically

by the appellate CM/ECF system, in accordance with Fed.R.App.P 25(c)(1)(D),

Fed.R.App.P. 25(c)(2).  Paper copies of the above-referenced document were also

served upon the parties on September 26, 2014 as set forth on the attached

certificate of service mailing list.


　　　　　　　　　　　　　　　　/s/ Andrew F. Pierce
　　　　　　　　　　　　　　　　Andrew F. Pierce

## CERTIFICATE OF SERVICE MAILING LIST

| | |
|---|---|
| **VIA ECF (electronically filed copy):**<br><br>John Joseph Michels, Jr.<br>Lewis Brisbois Bisgaard & Smith, LLP<br>550 W. Adams Street, Suite 300<br>Chicago, IL 60661<br>Telephone: (312) 463-3412<br>Email: john.michels@lewisbrisbois.com | **Attorneys For Defendants/**<br>**Appellees Molina Healthcare,**<br>**Incorporated and Molina**<br>**Information Systems, LLC**<br>(One ECF Copy) |
| **VIA ECF (electronically filed copy):**<br><br>Ronda Brown Esaw<br>McGuire Woods, LLP<br>1750 Tysons Blvd, Suite 1800<br>McLean, VA 22102-3915<br>Telephone: (703) 712-5392<br>Facsimile:   (703) 712-5050<br>Email: resaw@mcguirewoods.com | **Attorneys For Defendants/**<br>**Appellees Molina Healthcare,**<br>**Incorporated and Molina**<br>**Information Systems, LLC**<br>(One ECF Copy) |
| **VIA ECF only (electronically filed copy)**<br>**and Federal Express (eight paper copies)**<br><br>Clerk of the Court<br>Fourth Circuit Court of Appeals<br>1100 East Main Street, Suite 501<br>Richmond, VA 23219-3517<br>Telephone: (804) 916-2700 | (One ECF Copy and Eight Paper<br>Copies) |